1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9   Elizabeth M. Robertson,          )    No. CV-05-0917-PHX-MHM
                                      )
10           Plaintiff,               )    **ORDER**
                                      )
11  vs.                               )
                                      )
12                                    )
    Jo Anne B. Barnhart,              )
13  Commissioner of Social Security,  )
                                      )
14           Defendant.               )
                                      )
15  _____ )

16

17          Plaintiff Elizabeth M. Robertson, proceeding pro se, seeks judicial review of the

18  Administrative Law Judge's ("ALJ") decision denying her claim for disability insurance

19  benefits.  42 U.S.C. § 405(g).

20                                    **I.**

21                         **Procedural History**

22          On January 8, 2003, Plaintiff filed an application for Disability Insurance Benefits

23  under Title II of the Social Security Act wherein she alleged an onset date of October 10,

24  2002. Plaintiff's application was denied initially and on reconsideration.  Plaintiff requested

25  a hearing before an Administrative Law Judge ("ALJ").  After a hearing, the ALJ issued a

26  decision on July 21, 2004, finding that Plaintiff was not disabled within the meaning of the

27  Act between October 10, 2002 and December 3, 2003.  The ALJ did find that Plaintiff was

28  disabled within the meaning of the Act commencing December 4, 2003. Plaintiff sought

review of the ALJ's decision .  The Appeals Council did not grant Plaintiff's request for review and the decision became final.

Plaintiff commenced an action for review in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1).  Defendant has filed an answer (Doc. 3) and a certified copy of the administrative record.  (Doc. 3).  The parties have filed cross motions for summary judgment, supported by statements of fact and legal authority.  (Doc. 7-9, 11-12, 13, 15, 17).

## II.

## Standard of Review

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error.  Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole.  Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).  Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

> (1)   determine whether the applicant is engaged in "substantial gainful activity";
>
> (2)   determine whether the applicant has a "medically severe impairment or combination of impairments";

(3)     determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)     if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5)     if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).  See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**III.**

**Background Facts**

In her application, Plaintiff described her condition as middle and lower back pain, leg pain in both legs.  She stated that she could not sit or stand for more than ten minutes without severe pain or numbness in her back or legs.  She stated that she had become unable to work on October 10, 2002.  She listed her past work as including manager, network manager engineer, systems engineer, network administrator, and word processing.

Plaintiff was involved in a rear-end automobile accident in April 2002.  She was taken to the hospital where she complained of pain in her neck and upper and lower back, tingling sensation in her lower extremities, and headache.  She was diagnosed with mild strain to her back.  She lost approximately eight weeks of work because of the accident.

An x-ray of the lumbosacral spine in April 2002 showed mild degenerative disc spacing narrowing at L4-L5.  A magnetic resonance imaging scan (MRI) of the lumbosacral spine in May 2002 showed only a mild broad based disc bulge eccentric to the left at L4-L5 without definite root impingement.  Plaintiff was examined in June 2002 and decreased range of motion provocative of back pain was noted on examination.

During the period between June and September 2002, Plaintiff was examined by Duane Pitt, M.D., for predominant right leg pain and early degenerative disc disease. Dr. Pitt

- 3 -

administered a series of epidural steroid injections for pain treatment.  On October 24, 2002, Plaintiff was examined by Dr. Pitt and reported a significant amount of pain that radiated to her calf and left leg pain that stopped above the knee.  Dr. Pitt stated that Plaintiff had not improved despite aggressive physical therapy and anti-inflammatory injections.

A repeat MRI in October of 2002 showed a protrusion at the L4-L5 level and mild bilateral degenerative changes.  Plaintiff underwent a lumbar discography in January 2003 which was negative for any diskogenic back pain.

In November 2002, Plaintiff was examined by Bogdan Anghel, M.D.  Dr. Anghel noted that Plaintiff had a back injury in April and that the series of epidural injections had not provided significant relief.  Plaintiff had continued to complain of low back pain associated with intermittent numbness and tingling on the posterolateral aspect of the buttocks, thigh, calf and all the way down to the ankle, mostly on the right side and occasionally on the left side as well.  Dr. Anghel noted that the symptoms were getting progressively worse.  Dr. Anghel's diagnostic impression was that the study was normal, "[t]here is no evidence of a lumbosacral radiculopathy, plexopathy, polyneuropathy, or primary muscle disease."

On November 21, 2002, Plaintiff was examined by Dr. Pitt who noted that her predominant symptom was right leg pain radiating to her calf, left leg pain and intermittent back pain.  Dr. Pitt noted the normal study reported by Dr. Anghel.  Dr. Pitt reported that Plaintiff was in off work status due to continued discomfort and pain, which was "severe" and that he was concerned that it was impacting Plaintiff's daily activities.

In January 2003, Plaintiff was treated by Dr. Pitt and received another epidural steroid injection for pain.

Plaintiff was examined in March 2003 by Dr. Epstein, a medical neurologist.  Low back pain with hip felxion and hip internal rotation was noted and there was tenderness over the hips.  Plaintiff had difficulty walking on heels or toes and complained of back pain.  She complained of back pain with light pressure over her adipose.

1       On March 7, 2003, Plaintiff was examined by Dr. Pitt and reported that she continued
2   to have back pain and bilateral leg pain.  Dr. Pitt stated that Plaintiff had been symptomatic
3   for a year.  Plaintiff reported walking 15 minutes daily to try to lose weight.  On March 26,
4   2003, Dr. Pitt examined Plaintiff and reported that she continued to have back pain as her
5   predominant symptom and that she had undergone a series of epidural steroid injections that
6   completely resolved the majority of her leg discomfort.  Dr. Pitt noted that Plaintiff now had
7   proximal leg pain, buttock pain and back pain and that her symptoms were worse with
8   activity.  Dr. Pitt also noted decreased range of motion of the lumbar spine.

9       Two state agency physician consultants opined in April 2003 and June 2003 that
10  Plaintiff retained the capacity to perform sedentary work.  The April 2003 report stated that
11  the claimant's allegations were only partially credible and noted that the recent exam by Dr.
12  Epstein showed no objective findings. The June 2003 report stated that the claimant was only
13  partially credible, that she stated that she could not stand but she is able to walk normally on
14  exam.

15      In April 2003, Plaintiff was seen by Christopher Huston, M.D., her orthopedic
16  surgeon, complaining of severe low back pain. Plaintiff identified as aggravating factors
17  sitting, standing, standing from sitting, bending forward, lying on her back, stomach, driving,
18  walking, and increased activity. Dr. Huston reported that Plaintiff presented with low back
19  pain equal to bilateral lower extremity pain of unknown etiology.  Her CT discogram was
20  negative.  Plaintiff had not responded to physical therapy and epidural steroid injections. Dr.
21  Huston stated that it was conceivable that her symptoms may be related to polyarthralgias,
22  myalgias such as fibromyalgia.

23      Dr. Huston saw Plaintiff again in May 2003 for lumbar disk disease and low back
24  pain.  It appears that Plaintiff received two joint injections during this visit. Plaintiff was
25  examined in June 2003 by Dr. Huston.  Dr. Huston reported that Plaintiff was developing
26  multiple tender points and opined that his findings suggested fibromyalgia, although Plaintiff
27  did not meet the criteria for a diagnosis at that time.

28

1    On December 5, 2003, Plaintiff was examined by Joseph W. Nolan, M.D.  Plaintiff
2  complained of pain in her lower back that spreads to both sides and down both legs.  Dr.
3  Nolan reported that he believed that Plaintiff "does have fibromyalgia", that the cause was
4  unknown, but that "it would seem logical that the motor vehicle accident is the cause of her
5  fibromyalgia."   The medical evidence since December 4, 2003, indicates that Plaintiff was
6  diagnosed with active worsening fibromyalgia.

7                              The June 17, 2004 Hearing.

8    Plaintiff was 42 years of age at the time of the hearing.  She had completed high
9  school and had three years of college.  Plaintiff is married with three children, one of whom
10  was under eighteen years of age.  Plaintiff is approximately five feet five inches tall and
11  weighs about 245 pounds.

12    Plaintiff testified that she was unable to work because she had constant pain and was
13  unable to sleep more than two hours.  She claimed that a car accident had "started most of
14  this" and that she had suffered a "double whiplash."  Plaintiff testified that she is in constant
15  24-hour pain, primarily on her right leg, that she was unable to do things around the house
16  most of the time, and that it was difficult to wash dishes because of back pain.  Plaintiff
17  complained of pain all over but primarily in her lower back and legs.  Plaintiff said that her
18  daughter-in-law and her fifteen-year-old daughter help with the housework.  Plaintiff's
19  husband does the yard work.   Plaintiff testified that she does not smoke or drink alcoholic
20  beverages. Plaintiff complained of memory and concentration problems. She also has crying
21  spells.

22    Plaintiff testified that she took medication for fibromyalgia pain, migraines, blood
23  pressure and diabetes.  Plaintiff stated that she had last worked in October 2002 as a manager
24  at Indian Health Services.  She previously had worked as a manager at UPS and a network
25  engineer at Honeywell.  She did word processing many years earlier.  Plaintiff testified that
26  she could not manage groups of people at work and could not focus.  Plaintiff stated that she
27  had not worked at any employment since October 2002.  Plaintiff receives $245 per month
28  from the Department of Economic Security.  She also receives food stamps and is on Access.

1    Plaintiff testified that she had undergone physical therapy for the pain but had to stop.

2    She stated she could walk a good 25 feet before having to rest.  She complained that it hurt

3    to sit.  Plaintiff said her doctors had encouraged her to lose weight.  Plaintiff said she could

4    not sit for either an hour or half-hour at a time.  Plaintiff testified that she could lift five

5    pounds. Plaintiff is not able to stoop, squat or kneel.  Sometimes her equilibrium is affected.

6    Plaintiff testified that doctors had told her there is no cure for what she has and medication

7    had been prescribed for her condition.

8    Plaintiff testified that she socializes, and that she visits her mother who lives four

9    blocks away.  Plaintiff's son lives two blocks away.  Plaintiff's father had driven her to the

10   hearing.  Plaintiff's medication causes frequent urination.

11   A vocational expert ("VE"), Sandra Richter, testified that Plaintiff's past work

12   involving computer positions and word processing were within the category of sedentary

13   work performed at the skilled level. The VE testified that a hypothetical person with

14   Plaintiff's profile, including the need for a sit/stand option, would not be able to perform

15   Plaintiff's past relevant work.  The VE testified that such a person would not have acquired

16   skills in her past relevant work that would be transferable to skilled or semi-skilled jobs

17   which could be performed with a sit/stand option.  The VE stated that a hypothetical person

18   with moderate mental limitations would still be able to function satisfactorily.

19   The VE testified that if the ALJ found the Plaintiff's testimony credible, there would

20   not be jobs in the economy for such a person based on the fact that Plaintiff has problems

21   with focusing, concentrating, and memory, being able to stand or sit only briefly and no

22   lifting over five pounds.

23                              The ALJ's Conclusions.

24   The ALJ found that prior to December 4, 2003, the medical evidence established that

25   Plaintiff had severe impairments, including low back pain, chronic back pain, and migraine

26   headaches.  The ALJ found that Plaintiff's severe impairments were not attended with the

27   specific findings required to meet or equal the criteria established in the appropriate Listing

28   of Impairments, based on consideration of the State agency medical consultants.  The ALJ

proceeded to steps four and five and concluded that Plaintiff retained the residual functional capacity to perform sedentary exertional work.  The ALJ stated that he did not find "[Plaintiff's] allegations that she is incapable of all work activity credible because of inconsistencies in the record as a whole.  The minimal abnormal clinical findings, objective medical findings, and abilities of the claimant in this case are not consistent with allegations of disabling pain and physical symptoms prior to December 4, 2003."   The ALJ found that the medical records did not support Plaintiff's allegations of disabling radicular pain and symptoms.  The ALJ found that numerous examinations were normal and Plaintiff's pain appeared to be exaggerated, given her mild degenerative disc disease of the lumbar spine. Plaintiff had minimal findings on clinical examinations. The medical evidence did not support her allegations that she can walk less than 25 feet, stand for five minutes, and lift less than 10 pounds.

The ALJ rejected the June 2003 opinion provided by Jeff Zuberbier, a physician assistant, because his opinion was not supported by objective medical evidence or abnormal clinical findings and Mr. Zuberbier gave no reasons to support his extreme opinion.

The ALJ credited the psychological evaluation of Peter Morton, Psy. D. who indicated that Plaintiff was in the borderline range of intellectual functioning and that her profile on the Minnesota Multiphase Personality Inventory suggested repression, denial mechanisms, and a conversion of emotional difficulties into somatic complaints.

The ALJ cited the vocational expert's testimony that Plaintiff's past work as a computer specialist and word processor were sedentary skilled work.

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 10, 2002.  The ALJ concluded that Plaintiff was not under a disability prior to December 4, 2003.  The ALJ found that prior to December 4, 2003, Plaintiff retained the capacity to perform sedentary work.  Since December 4, 2003, Plaintiff had been unable to perform her past relevant work.  The ALJ found that Plaintiff did not have any transferable skills to jobs within her residual functional capacity since December 4, 2003. The ALJ found

1    that the residual functional capacity assessments of the state agency consultants supported

2    the conclusion that Plaintiff was not disabled prior to December 4, 2003.

3                                              **IV.**

4                                         **Discussion**

5            Defendant contends on summary judgment that substantial evidence supports the

6    ALJ's finding that Plaintiff was not disabled prior to December 4, 2003.  In support of her

7    summary judgment motion, Plaintiff contends that she should be awarded benefits from

8    October 10, 2002 through December 4, 2003 because there is no substantial evidence to

9    support the ALJ's conclusion that she was able to work during this period of time.  Plaintiff

10   claims that the ALJ gave no cogent explanation for finding her allegations not credible.

11   Plaintiff further argues that the ALJ ignored Dr. Nolan's statement that the motor vehicle

12   accident in April 2002 caused her fibromyalgia and arbitrarily found disability commencing

13   on December 4, 2003.  Plaintiff also contends that the ALJ misapplied the VE's testimony

14   and misinterpreted the medical evidence. Plaintiff further complains that the ALJ did not

15   develop the record regarding her other impairments such as diabetes, hypertension, sleep

16   apnea, obesity and possibly organic brain deficits.  Plaintiff has advanced other arguments

17   in support of her summary judgment motion, including that the applicable regulations are

18   void for vagueness and that she was denied due process.

19           The Court concludes that the ALJ erred by not affording more weight to the opinions

20   of Plaintiff's treating physicians.  In this case, the ALJ cited in his findings the objective

21   medical evidence, including an x-ray, MRI, lumbar diskography, etc., which he found were

22   consistent with his earlier finding as to Plaintiff's residual functional capacity.  The ALJ

23   further rejected the June 2003 opinion of Jeff Zuberbier, a physician assistant, and stated his

24   reasons therefore.   However, the ALJ does not describe his consideration of the medical

25   evidence provided by Plaintiff's treating physicians between October 2002 and December 3,

26   2003 except for that provided by Drs. Epstein and Huston.

27           In June 2002, an examination of Plaintiff showed a decreased range of motion

28   provocative of back pain. The medical evidence of record shows Plaintiff's numerous

                                              - 9 -

1    consultations with Dr. Pitt who treated Plaintiff's pain by administering epidural steroid

2    injections between June and September 2002, and in January 2003. On November 21, 2002,

3    Dr. Pitt noted that Plaintiff was in an off work status due to continued discomfort and pain,

4    which was "severe" and that he was convinced it was impacting Plaintiff's daily activities.

5    In March 2003, Dr. Epstein, a medical neurologist, reported Plaintiff's complaints of low

6    back pain and that there was tenderness over the hips. Dr. Pitt examined Plaintiff in March

7    2003 and reported that Plaintiff continued to have back pain and bilateral leg pain, noting that

8    her symptoms were worse with activity. In April 2003, Plaintiff complained to Dr. Huston

9    of severe low back pain and that aggravating factors included sitting, standing, standing from

10   sitting, bending forward, lying on her back, stomach, driving, walking and increased activity.

11   In April 2003, Dr. Huston stated that Plaintiff's symptoms conceivably were related to

12   polyarthralgias, myalgias such as fibromyalgia. In June 2003, Dr. Huston reported that

13   Plaintiff was developing multiple tender points and opined that his findings indicated

14   suggested fibromyalgia, although Plaintiff did not meet the criteria for a diagnosis at that

15   time. Plaintiff was diagnosed with fibromyalgia in December 2003 by Dr. Nolan who

16   expressed the opinion that "it would seem logical that the motor vehicle accident [in April

17   2002] is the cause ..."

18         In this case, it appears that the ALJ gave undue credence to the opinion of the

19   examining psychologist, Dr. Morton. An examining physician's opinion is afforded less

20   weight than the opinion of a treating physician but more weight than the opinion of a non-

21   examining physician. Lawson v. Massanari, 231 F. Supp. 2d 986, 996 (D. Or. 2001).

22         The ALJ's reasons for rejecting the opinions of Drs. Pitt, Huston and Nolan as

23   discussed above are not supported by clear and convincing reasons or substantial evidence.

24   C.f., Lawson, 231 F. Supp. 2d at 996 (if an examining physician's opinion is not contradicted

25   by another physician, the ALJ may only reject it for clear and convincing  reasons; even if

26   contradicted by another physician, the ALJ may not reject the opinion without providing

27   specific and legitimate reasons supported by substantial evidence in the record).

28   Significantly, Dr. Nolan expressed the opinion that Plaintiff's fibromyalgia was caused by

- 10 -

1   the April 2002 car accident.  The medical evidence therefore indicates that Plaintiff's
2   condition had progressed and worsened from the time of the April 2002 car accident forward
3   based on the opinions expressed by Drs. Pitt and Huston, Plaintiff's treating physicians.

4          It further does not appear that the ALJ considered Plaintiff's testimony regarding pain
5   and suffering associated with Plaintiff's condition.  In order to discount claims of excess pain,
6   the ALJ must make specific findings justifying the decision which "must be supported by
7   clear and convincing reasons why the claimant's testimony of excess pain was not credible
8   and must be supported by substantial evidence in the record as a whole."  Johnson v. Shalala,
9   60 F.3d 1428, 1433 (9th Cir. 1995).  The ALJ may not disbelieve the claimant's testimony of
10  pain "solely because the degree of pain is not supported by objective medical evidence."
11  Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993).   In this case, Plaintiff consistently
12  complained of worsening pain and she sought and received medical treatment from several
13  physicians from the time of the April 2002 car accident.  Her testimony therefore was
14  consistent with the medical evidence of record.  The VE testified that if Plaintiff's testimony
15  is considered credible, there were no jobs in the economy for such a person based on the fact
16  that Plaintiff has problems with focusing, concentrating, and memory, being able to stand or
17  sit only briefly and no lifting over five pounds.

18         Based on this Court's findings, the ALJ erred in the evaluation of the medical opinions
19  of Drs. Pitt, Huston and Nolan, Plaintiff's treating physicians.  The ALJ also erred in
20  evaluating Plaintiff's testimony regarding pain and suffering associated with Plaintiff's
21  condition.

22         The Court has considered Plaintiff's other arguments and finds they are without merit.
23  For example, the ALJ did not err regarding consideration of Plaintiff's other alleged
24  impairments such as diabetes, hypertension, sleep apnea, obesity and possibly organic brain
25  deficits in light of the medical evidence of record. There is no authority that would permit
26  the ALJ to be cross-examined.  The record does not establish that Plaintiff was denied due
27  process.

28

1    The Court concludes that remand for further corrective proceedings is not warranted.

2    Rather, the Court concludes in its discretion that Plaintiff is entitled to payment of benefits

3    for a period of claimed disability between November 21, 2002, the date indicated in medical

4    records that Plaintiff was in an off work status and her "severe" pain was impacting her daily

5    activities, through December 3, 2003. In reaching this conclusion, the Court has considered

6    whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether

7    there are outstanding issues that must be resolved before a determination of disability can be

8    made, and whether it is clear from the record that the ALJ would be required to find the

9    claimant disabled were such evidence credited.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th

10   Cir. 1996).

11   In this case, if the improperly rejected evidence were credited, the ALJ would be

12   required to find Plaintiff disabled for the period of November 21, 2002 through December

13   3, 2003. There is substantial medical evidence of record as discussed above on which to base

14   the finding that Plaintiff was disabled during that period.  There are no outstanding issues

15   that must be resolved before a determination of disability can be made as to this limited

16   period.

17   **Accordingly,**

18   **IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc.11 ) is granted

19   in part and denied in part.

20   **IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Doc.

21   7) is granted in part and denied in part.

22   **IT IS FURTHER ORDERED** that the Commissioner's decision to deny benefits for

23   the period of November 21, 2002 through December 3, 2003 is reversed and this matter is

24   remanded for calculation and payment of benefits in a manner consistent with this Order.

25   **IT IS FURTHER ORDERED** that the Commissioner's decision to deny benefits for

26   the period of October 10, 2002 through November 20, 2002 is affirmed.

27   ///

28   ///

1    **IT IS FURTHER ORDERED** that Judgment shall be entered consistent with this

2  Order.

3    DATED this 29th day of September, 2006.

4

5

6    _____

7    Mary H. Murguia
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -